TISCH v. HIRSCH et al.

(Supreme Court, Appellate Division, Second Department.   July 23, 1898.)

MASTER AND SERVANT—DEFECTIVE APPLIANCES—PROXIMATE CAUSE OF INJURY.
   In an action to recover damages for injuries resulting from an em-ployer's alleged failure to supply a safe appliance for the plaintiff's use, it appeared that on the upper story of the defendant's building an en-trance to the elevator was guarded by a bar which swung at one end on a screw, and, when up, rested at the other end in a socket in the top of a hasp. It was therefore necessary to have it hang loose enough on the screw to permit of swinging it up past the hasp before pulling it back and dropping it in. At the time in question the plaintiff was called to put up the bar, but, having failed to slip it into the socket, it fell back, and he was precipitated down the shaft. It appeared that the screw had often come out, and was rather loose; but on this occasion it did not pull out of the woodwork, and it did not appear that the bar passed any further beyond the hasp than was to be expected. Held, that the accident was due to plaintiff's failure to properly guide the bar, and that the facts did not establish any omission of duty by the defendant.

Appeal from trial term, Kings county.

Action by Nathan Tisch, an infant, by Marcus Tisch, his guardian ad litem, against Isaac Hirsch and Benjamin Hirsch. From a judg-ment on a verdict of a jury, and from an order denying a new trial, defendants appeal. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, and HATCH, JJ.

Herbert C. Smyth (Edwin A. Jones, on the brief), for appellants.
Hugo Hirsh, for respondent.

PER CURIAM. This is an action brought to recover damages for injuries sustained by reason of the negligence of the defendants. The defendants' negligence is claimed to consist in the fact that they failed in their duty, by furnishing an unsafe appliance for the use of an employé. The defendants occupied certain floors in premises leased by them at 114 and 116 Greene street, in the borough of Man-

hattan, where they carried on the muslin-underwear business. In the premises so occupied was a hatchway, through which ran an elevator from the ground to the top floor of the building, which was six stories in height. Upon the sixth floor the elevator shaft was protected, when the elevator was not at that floor, by a wooden bar, weighing about 20 pounds, which, when down, was suspended on the inside of the shaft, and held in place by a screw. This screw had a head upon one end, passed through a hole in the bar, which hole was somewhat larger than the screw, and entered the wood which formed a part of the side of the elevator shaft. Upon the other side of the shaft was a hasp, which projected from its side about two inches, and into which the bar was raised and placed, constituting a barrier to the opening into the shaft. The screw which held the bar in place entered the wood some inches; and in the course of the operation of the bar, in putting it up and letting it down, it would become loosened, and in time the hole had worn so that the orifice for the screw was considerably enlarged. It was from time to time tightened by driving the screw further into the wood, or by putting pieces of wood in the hole in order to fill it up. Upon one occasion it had come entirely out, and fallen down; but usually it was kept in place, either by turning the screw, causing it to go in further, or by driving it in. The accident happened, as described by the plaintiff, in this wise: He was directed by a fellow workman, who was running the elevator, and had started down, to close the opening by putting up the bar. He states:

"When I went there, I took it out,—the bar,—with one hand I had on top of it, and the other under it; and I went to put it right into the catch. I was guiding it in the catch, and, instead of guiding it in the catch, it went on the outside. * * * When the bar went down, and I went over it, the bar did not come off the hook. It swung down. It swung down, and hung by this screw."

The plaintiff fell on top of the descending elevator, and sustained serious injuries.

It is evident that this bar, and the contrivance for holding it in place, were quite simple, and quite easily operated. The plaintiff was a boy 17 years of age, and it does not appear but that he was in all respects competent, in strength and otherwise, to handle the bar, and place it in the hasp. The specific act of negligence with which the defendants are sought to be charged consists in permitting the screw which held the bar to become loose, and thus allow a play of the bar, which permitted it in its descent to pass outside, instead of into, the hasp. It is evident, to a demonstration, that in the use of this bar it was absolutely essential that there should be enough space upon the screw for the bar to play sufficient to permit it to pass outside of the hasp; otherwise it could not be operated at all. This is clearly indicated by the method of operation. When the bar was down it hung inside of the door of the shaft. The operator reached in, lifted it up, carried it above the hasp, and then let it down. It is clear, therefore, that the screw holding one end of the bar permanently could not be so tight that when raised the bar would come in a direct line with the hasp, for otherwise there was no method

by which it could be gotten above the hasp so that it might fit in. Consequently a person making use of it, having carried it above the hasp, was bound to notice that it must be directed into the particular space by his act, else it would or might pass outside, as it was constructed for that purpose. At the time of the accident the screw did not give way. It does not, therefore, present a case where the plaintiff was precipitated into the shaft by a sudden giving way of the bar. On the contrary, the only specified negligence consists in the fact that there was so much play to the screw as to carry the bar outside of the hasp, and that by reason of it the plaintiff lost his balance and fell in. It is therefore perfectly clear that whether the screw was looser at some times than it was at others, or whether it might have been made tighter, and still have performed its office, yet there is nothing in the evidence to show that at this particular time it passed any further beyond the hasp than it was expected to pass in its ordinary operation. The failure of the plaintiff was in omitting to properly guide it into position; and because he failed to do this, and thereby lost his balance, is not sufficient upon which to found negligence against the defendants in failing to provide a suitable appliance. We are unable to find anything in this case in which the defendants omitted any duty that was devolved upon them. This was a simple appliance, necessarily constructed so as to play more or less at its secure end, and, when in use, depended for its accuracy of entrance into the hasp upon the act of the operator, and not upon the particular method of fastening at its stationary end. We are therefore led to the conclusion that the plaintiff has failed to make out a cause of action against the defendants.

The judgment should be reversed, and a new trial granted; costs to abide the event.